The GOODYEAR TIRE & RUBBER COMPANY, Plaintiff-Appellant,

v.

RELEASOMERS, INC.,
Defendant-Appellee.

No. 87–1120.

United States Court of Appeals,
Federal Circuit.

July 1, 1987.

Basil J. Lewris, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for plaintiff-appellant. With him on the brief were Ford F. Farabow, Jr. and Carol P. Einaudi.

Robert D. Yeager, Kirkpatrick & Lockhart, Pittsburgh, Pa., argued for defendant-appellee. With him on the brief was Edward L. Pencoske.

Before DAVIS, Circuit Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.

DAVIS, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the

Northern District of Ohio, Eastern Division (Lambros, J.), dismissing the petition of Goodyear Tire & Rubber Company (Goodyear) for a declaratory judgment on the validity, enforceability, and non-infringement of two patents issued to Releasomers, Inc. The trial judge granted summary judgment in favor of Releasomers, holding that the court did not have jurisdiction under 28 U.S.C. § 2201 because there was no actual case or controversy between the parties. We reverse and remand for further proceedings.

## I.

The parties have been involved in two separate suits involving the relevant technology, which is directed to a tire cure bladder release agent and a related method of use. The first suit, which Releasomers brought in an Ohio state court in June 1982, alleged misappropriation of certain trade secrets related to the tire cure bladder technique. Releasomers claimed damages in excess of $18 million. The state trial court dismissed the action on its merits and granted Goodyear's petition for summary judgment. Releasomers appealed, and the state court of appeals reversed and remanded the action for a trial on the merits. That state action is still pending.

While the state action was ongoing, Releasomers was issued two patents directed to essentially the same technology involved in the state trade secret litigation: U.S. Letters Patent No. 4,544,122 ('122 patent) and No. 4,547,544 ('544 patent). Appellant Goodyear subsequently initiated a suit, this one in federal District Court, seeking a declaratory judgment that Releasomers' '544 and '122 patents were invalid,

unenforceable, and noninfringed. The District Court dismissed the action, concluding that the District Court did not have jurisdiction to hear the case under 28 U.S.C. § 2201, the Declaratory Judgment Act,[1] and granted Releasomers' motion for summary judgment. The District Court reasoned that "[t]here ha[d] neither been conduct nor a course of action of [sic: on] the part of the defendant Releasomers, merely discussion, indicating possibility of suit" and concluded that there was no "actual controversy" between the parties.

## II.

The case comes to this court following grant of summary judgment in favor of Releasomers by the District Court. It was therefore incumbent on the District Court to construe all inferences in favor of Goodyear, the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149, 229 U.S.P.Q. 721, 723 (Fed.Cir.1986). All significant doubt over pertinent factual issues must be resolved in favor of the non-moving party. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 U.S.P.Q. 1286, 1288 (Fed. Cir.1984). Fed.R.Civ.P. 56 requires the trial judge, after viewing the factual material in this manner, to determine whether a moving party is entitled to summary judgment as a matter of law.[2] As a reviewing court, we are in no way bound by the District Court's conclusion that there is no material dispute as to the factual issues in this matter. *Milton Hodosh v. Block Drug Co.*, 786 F.2d 1136, 229 U.S.P.Q. 182 (Fed. Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).[3] For the reasons

---

1. 28 U.S.C. § 2201 provides in pertinent part:
   In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. Releasomers argues that affidavits submitted by appellant are insufficient to oppose summary judgment. The law is clear, however, that a

party may oppose summary judgment "by any of the kinds of evidentiary materials listed in [Fed.R.Civ.P.] 56(c), except the mere pleadings themselves." *Finish Eng'g Co. v. Zerpa Indus.*, 806 F.2d 1041, 1043 n. 4, 1 U.S.P.Q.2d 1114, 1116 n. 4 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

3. Because this issue "clearly implicates the jurisprudential responsibilities of this court in a field within [our] exclusive jurisdiction, i.e., patent law, ... we are not bound by decisions of the regional circuit courts." *Gardco Mfg., Inc. v.*

discussed *infra,* Part III, we conclude that, although the judge correctly articulated the applicable law for determining the existence of a controversy, he erroneously resolved the factual issues in favor of Releasomers and plainly erred in determining that Goodyear was not under a reasonable apprehension of an infringement suit by Releasomers.

## III.

■ It goes without saying that federal courts do not sit to render advisory opinions. Thus, the Declaratory Judgment Act requires the existence of an actual case or controversy between the parties before a federal court can constitutionally assume jurisdiction. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). As this court stated in *Indium Corp. v. Semi-Alloys, Inc.,* 781 F.2d 879, 228 U.S.P.Q. 845 (Fed. Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986), the test for determining whether an actual case or controversy exists in a declaratory judgment action involving patents is two-pronged. First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device. *Indium,* 781 F.2d at 882–83, 228 U.S.P.Q. at 848 (citing *Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398–99, 222 U.S.P.Q. 943, 949 (Fed.Cir.1984)).[4]

■ The second part of the test is clearly met in this instance. It is uncontroverted that Goodyear manufactures tires using a tire cure bladder process. As the District Court recognized, the pivotal issue turns on whether, looking at the totality of the circumstances, Releasomers' activities were such that Goodyear was placed in reasonable apprehension of a suit for patent infringement. *See C.R. Bard, Inc. v. Herst Lighting Co., etc.,* 820 F.2d 1209, 1212, 2 U.S.P.Q.2d 2015 (Fed.Cir.1987).

*Schwartz,* 716 F.2d 874, 880, 219 U.S.P.Q. 197, 203 (Fed.Cir.1983). The court concluded that the facts and circumstances here were analogous to those in *Indium,* and therefore the Declaratory Judgment Act did not confer federal jurisdiction. We disagree. In *Indium,* the defendant's questionable activity consisted of writing plaintiff a single letter offering the plaintiff a license. There was some further evidence in that case that that defendant had a history of suing other third parties for patent infringement. In sharp contrast, the situation here indicates that these parties are themselves currently embroiled in a protracted dispute in state court over the commercial technology generally covered by the '122 and '544 patents. Unlike the parties in *Indium,* whose business dealings amounted only to a single written communication offering a license, the current parties have had a clear history of adverse legal interests as shown by the ongoing state court action. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The damages that Releasomers seeks ($18 million) in the Ohio state action are substantial and indicate clearly that Releasomers considers the disputed technology to be valuable.

The mere fact that the state court action did not specifically involve the '122 and '544 patents is immaterial in these circumstances. First, those patents did not issue until after the state trial judge had granted Goodyear's motion for summary judgment, and thus the patents could not have been at issue in that litigation. *Cf. C.R. Bard v. Schwartz,* 716 F.2d 874, 219 U.S.P.Q. 197 (Fed.Cir.1983). Second, though the patents had not issued when the state action was begun, that proceeding involves trade secret misappropriation of the same technology covered by the Releasomers' '122 and '544 patents. Accordingly, the conduct of Releasomers, in itself, is sufficient to give Goodyear an objective inference of an impending infringement suit now that the patents have issued. We note too that

---

4. *See* n. 3, *supra.*

Releasomers' course of conduct during negotiations in the state action has done nothing to allay Goodyear's purported fears of an anticipated infringement suit. Affidavits submitted to the District Court from Goodyear indicate that, during negotiations involving the state action, Releasomers' representatives not only informed Goodyear of the allowance of the patents, but also made innuendos that could reasonably have led Goodyear to believe that Releasomers would bring an infringement action.[5]

In concluding that there was no justiciable controversy between the parties, the District Court was evidently persuaded by an affidavit of Releasomers' president, attesting that, as president, he had never expressly authorized that a suit be brought against Goodyear for patent infringement. Nevertheless, we cannot read the Declaratory Judgment Act so narrowly as to require that a party actually be confronted with an *express* threat of litigation to meet the requirements of an actual case or controversy. Such a requirement would utterly defeat the purpose of the Declaratory Judgment Act, which in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights. *See* Moore's Federal Practice ¶ 57.08[2] 1986. As this court recognized in *C.R. Bard v. Schwartz, supra,* a patentee's intentions "may change over time" and the mere fact that Releasomers' president has not at this particular moment authorized a patent infringement action against Goodyear is not dispositive of its intentions for the future. 716 F.2d at 881, 219 U.S.P.Q. at 203. The factual background in this case is such that a reasonable party could easily infer that Releasom-

ers would, at some time, bring a patent infringement suit against Goodyear. By suing Goodyear in state court for the same technology as is now covered by the patents, Releasomers has engaged in a course of conduct that shows a willingness to protect that technology. *See, e.g., C.R. Bard v. Schwartz, supra,* 716 F.2d at 880–81, 219 U.S.P.Q. at 203; *International Medical Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.,* 787 F.2d 572, 575, 229 U.S.P.Q. 278, 281 (Fed.Cir.1986). And at the oral argument Releasomers' counsel expressly said that appellee would attempt to discover whether appellant was infringing the patents and, once it determined that in its view Goodyear was infringing, "I [counsel] would have no hesitation whatsoever of bringing about a lawsuit." This candid revelation of appellee's ongoing purpose and mind was directly contrary to the implicit and necessary assumption of Releasomers' motion for summary judgment that there was no case or controversy.

## CONCLUSION

In considering all the facts in this case, construing all inferences in favor of Goodyear, as we are bound to do, we can come to no other conclusion than that the District Court erred, as a matter of law, in granting Releasomers summary judgment. From the underlying facts in this case, it is a compelled inference that Goodyear had an objective apprehension of an impending law suit in federal court for infringement of the '122 and '544 patents.[6] We hold, therefore, that the District Court did have jurisdiction to proceed under the Declaratory Judgment Act,[7] reverse the judgment of

---

**5.** In an affidavit of Goodyear's in-house counsel Henry Young, Mr. Young stated that Releasomers' representative said that when the patents in suit issued, Releasomers and Goodyear "would have to talk about infringement of the patents by Goodyear and possible licensing since Goodyear might be liable for past patent infringement," and that "the parties might wind up in Federal Court on these issues."

**6.** On this record—in which all the material facts have been made available and are before us— we can in effect grant summary judgment for

Goodyear (although it made no motion for summary judgment) that the District Court does have jurisdiction. *See* 28 U.S.C. § 2106; *Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157, 165–66 (2d Cir.1971); *Morgan Guaranty Trust Co. of New York v. Martin,* 466 F.2d 593, 599–600 (7th Cir.1972).

**7.** The District Court has discretion to refuse to proceed under the Declaratory Judgment Act (*Public Affairs Press v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962)) but there is not the slightest suggestion in the Dis-

the District Court, and remand for further proceedings.

REVERSED AND REMANDED.

trict Court's opinion that, if it thought it had jurisdiction, it would have exercised its discretion not to proceed. Nor does the appellee suggest to us that there are any reasons, other than the lack of jurisdiction, for the court's refusing to proceed under the Act. Though Goodyear expressly asked for a remand for further proceeding on its complaint, Releasomers did not raise any question as to the District Court's discretion not to act under the Declaratory Judgment Act. Instead, appellee simply urged that the District Court's disposition was correct.