**OCÉ–OFFICE SYSTEMS, INC., and Océ–Nederland B.V., Plaintiffs,**

v.

**EASTMAN KODAK CO., Defendant.**

No. 92 C 2221.

United States District Court, N.D. Illinois, E.D.

Nov. 3, 1992.

Not only could she have drafted one, but it appears that she has created one in the interim. *See* Stevens Dep. at pp. 49–50.

William O. Bittman, Pierson, Ball & Dowd, Washington, D.C., Jeffrey Singer, Paul E. Wojcicki, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, Ill., Bernard L. Sweeney, Birch, Stewart, Kolasch & Birch, Falls Church, Va., for plaintiffs.

Thomas F. Gardner, Suzanne S. Greene, Jones, Day, Reavis & Pogue, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiffs, Océ–Office Systems, Inc. and Océ–Nederland B.V. ("Océ"), filed this action against the defendant, Eastman Kodak Co. ("Kodak"), seeking a declaratory judgment that plaintiffs' Océ 2500 Copier–Duplicator (hereinafter "Océ 2500") does not infringe any claim of United States Letters Patent 4,140,387 (hereinafter the '387 patent), which is owned by Kodak, or alternatively that no claim of the '387 patent is valid. Presently before the court is defendant's motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, alleging that this Court lacks subject matter jurisdiction because no justiciable controversy exists between the parties. For the reasons set forth below, defendant's motion is denied.

### I. Jurisdiction of Federal Courts under the Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that federal courts may issue declaratory judgments only in cases of "actual controversy." 28 U.S.C. § 2201; *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed.Cir.1992); *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980). This requirement is a jurisdictional prerequisite. Therefore, the complaint in a declaratory judgment action must allege facts sufficient to establish such an actual controversy. *International Harvester*, 623 F.2d at 1210.

Furthermore, when the jurisdictional sufficiency of a complaint is challenged, as here, the burden is on the plaintiff to establish jurisdiction affirmatively with competent proof. *McNutt v. General Mo-*

*tors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). And where the facts presented in support of, and in opposition to, a motion to dismiss present a factual controversy, the resolution requires the court to "weigh the conflicting evidence in arriving at the factual [foundation] upon which to base the legal conclusion that subject matter jurisdiction either exists or does not." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). The court will, however, resolve all conflicts in the evidence in the favor of the plaintiff. *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.1980).

■ Specifically, in declaratory judgment actions concerning patents, there are two prerequisites to establishing an actual controversy. First, the plaintiff must have a reasonable apprehension, based on defendant's conduct, that it will face an infringement suit or the threat of one if it commences or continues the activity in question. *Crown Drug Co. v. Revlon Inc.*, 703 F.2d 240, 243 (7th Cir.1983); *Shell Oil Co.*, 970 F.2d at 887. Secondly, the plaintiff must have actually produced the accused article or have engaged in preparations for production. *International Harvester*, 623 F.2d at 1210. This test is objective and is applied to the facts in existence at the time the complaint is filed. *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 883 (Fed.Cir.1985). Océ has obviously satisfied the second prong of the "actual controversy" test in that production and sales of the Océ 2500 in the United States have been ongoing since 1989. Thus, the only remaining issue pending before the court is whether Océ had a reasonable apprehension of an infringement suit or the threat of one based on defendant's conduct. Applying the standard set forth above to the evidence presented, the court finds that a justiciable controversy existed at the time the suit was filed.

### A. Facts Establishing Jurisdiction

In challenging jurisdiction, Kodak submitted an affidavit by Ronald P. Hilst, Senior Director of Business Development for Kodak, and various correspondence between the two parties. In opposition to Kodak's motion to dismiss, Océ submitted a declaration by Johannes M.M. van der Velden, Assistant Director and Legal Counsel for Océ, affidavits by William O. Bittman and Bernard L. Sweeney, both attorneys representing Océ in this action, as well as various correspondence between the parties. These materials established the facts as set out below.

In 1984, Océ initially contacted Kodak regarding licenses under the '387 patent with the intent to use the '387 patent technology in as yet undeveloped Océ copier systems. At that point in time, the Océ 2500 was beyond this stage in its development and, therefore, these discussions did not include this copier. These licensing discussions continued until 1987 when they were terminated without Océ ever acquiring a license under the '387 patent. According to Océ, the terms offered by Kodak were unacceptable and Kodak would not consider granting a license under the '387 patent with respect to high-speed copiers.

With regard to the Océ 2500, it was Kodak that initiated contact with Océ in a letter dated August 5, 1991. In this letter, Kodak expressed its belief that the Océ 2500 infringed the '387 patent and stated that if Océ disagreed, it was to provide a written explanation which conclusively established that there was no infringement. Kodak then stated that failure of Océ to provide such an analysis would indicate to Kodak that its belief regarding infringement was correct and that Océ should either take a license under the patent or immediately terminate its infringing activity and compensate Kodak for any damages resulting from the infringement. Defendant's Memorandum in Support, Exhibit F.

Océ responded on September 25, 1991, with a letter to Kodak explaining why the Océ 2500 did not infringe the claims of the '387 patent. In the last paragraph of the letter, Océ requested that Kodak specify the terms under which it would be willing to license the '387 patent for future Océ machines. Nowhere in this letter to Kodak did Océ offer to discuss licensing the '387 invention for use in the Océ 2500

copier. Defendant's Memorandum in Support, Exhibit G.

On November 18, 1991, Kodak responded by letter, stating that it still believed the Océ 2500 infringed the '387 patent. Additionally, Kodak enclosed with this letter a statement, prepared by Kodak's Patent Legal Staff, explaining why they believed the Océ 2500 copier directly infringed the '387 patent. Kodak then outlined the terms under which it would be willing to grant Océ a license under the '387 patent for high-speed copiers. Kodak further stated its intention that any such licenses would apply to the Océ 2500 as well as other relevant copiers. Kodak elaborated that it must hear from Océ regarding this matter on or before December 15, 1991 or else Kodak would "assume that Océ intend[ed] to continue its infringing activities, and ha[d] no interest in pursuing [the] license discussions." Kodak explained that if it did not hear from Océ, it would then proceed "with consideration of other appropriate actions to protect Kodak's patent rights." Defendant's Memorandum in Support, Exhibit H.

The parties subsequently met on March 31, 1992. According to plaintiff's brief in opposition to Kodak's motion to dismiss, Océ agreed to hold such a meeting to further try to convince Kodak that the Océ 2500 did not infringe the '387 patent. At the start of this meeting, Kodak reiterated its belief that the Océ 2500 infringed the '387 patent. (van der Velden Declaration at ¶ 15). Océ then explained why the Océ 2500 did not infringe the '387 patent based on the two position papers Océ had sent to Kodak prior to this meeting. Kodak responded that despite Océ's explanations, Kodak still believed that the Océ 2500 literally infringed the patent. Furthermore, during these discussions, Kodak made reference to the fact that it believed that a jury would decide this controversy in its favor. (van der Velden Declaration at ¶ 15).

When Océ suggested that the matter be sent to arbitration for resolution, Kodak responded that it did not favor arbitration because it found arbitration to be more expensive and time-consuming than litigation. Kodak also indicated that arbitration would deprive it of the opportunity to have a jury decide the liability issues. (van der Velden Declaration at ¶ 16). And while Ronald P. Hilst stated in his affidavit that no one at Kodak ever directly or indirectly threatened to file an infringement action against Océ, Kodak has not denied that the above statements were made. And although these statements may not have been meant to threaten litigation, that was the effect that they had on the Océ representatives. Furthermore, in light of the ongoing series of communications between these two parties, the court finds that such an interpretation was reasonable under the circumstances.

The Océ representatives then terminated these discussions. They did so based on defendant's conduct at the meeting and their belief that the two parties were not going to be able to agree on the relationship between the Océ 2500 and the '387 patent. (van der Velden Declaration at ¶ 20). It was after the breakdown of these discussions that Océ filed this declaratory judgment action seeking a final determination of this issue, rather than having Kodak's charges of infringement continue indefinitely.

**B. Establishing Reasonable Apprehension**

■ As the main thrust of its argument that there was no reasonable apprehension of suit, Kodak repeatedly relies on the fact that it never directly or indirectly threatened to sue Océ for infringement. However, this reliance is misplaced because an express threat to sue is not necessary in order for there to be a justiciable controversy in such patent cases. *Shell Oil Co.,* 970 F.2d at 888; *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988); *see Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 956 (Fed.Cir.1987) ("we cannot read the Declaratory Judgment Act so narrowly as to require that a party actually be confronted with an *express* threat of litigation ..."). Requiring an express charge of litigation would destroy the purpose of the

Declaratory Judgment Act, which in patent cases is to provide the allegedly infringing party relief from uncertainty and delay with regard to its legal rights. *Goodyear*, 824 F.2d at 956.

In fact, there does not even need to be an express charge of infringement in order for a justiciable controversy to exist. *Arrowhead*, 846 F.2d at 736; *see, e.g., Grafon Corp.*, 602 F.2d at 784; *Super Products Corp. v. D P Way Corp.*, 546 F.2d 748, 753 (7th Cir.1976). "We must [first] look for any express charges of infringement, and if none, then to the totality of the circumstances." *Shell Oil Co.*, 970 F.2d at 886. And the totality of the circumstances, with regard to defendant's conduct, must be such as to indicate defendant's intent to enforce its patent. *Arrowhead*, 846 F.2d at 736. The Federal Circuit Court in *Arrowhead* specifically stated that "[i]f defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, [and] certainty has rendered apprehension irrelevant." *Arrowhead*, 846 F.2d at 736. Therefore, based on Kodak's express charges of infringement, as well as its intent to enforce its patent rights as expressed in its letter of November 18, 1991, combined with its conduct at the March 31, 1992 meeting, it was reasonable for Océ to anticipate the threat of an infringement suit.

In rebuttal, Kodak additionally argues that Océ has never apprehended an infringement suit; rather, it contends Océ is just using this action to further its bargaining position in what is a continuing series of business negotiations. It supports this contention with an April 3, 1992 letter from Océ to Kodak stating that Océ hoped that this matter could be resolved without the litigation going to conclusion. Kodak argues that this letter was essentially a counteroffer to the terms proposed by Kodak at the March 31 meeting. Océ states that this letter was no more than a transmittal letter sent to Kodak with a courtesy copy of the complaint, and that the portion of the letter to which Kodak refers was an attempt to keep open the possibility that any litigation might be resolved out of court. (Sweeney Affidavit at ¶ 3).

The court finds Kodak's position unpersuasive. While the April 3, 1992 letter seems to indicate a willingness on the part of Océ to continue negotiations, the affidavits of both Mr. Hilst and Mr. Bittman state that in no way should the letter be construed to indicate that Océ wishes to continue negotiations. Océ further maintains that it never negotiated licensing conditions for the Océ 2500 under the '387 patent. (van der Velden Declaration at ¶ 21). Therefore, based on the material submitted and supported by the fact that Océ has unwaveringly maintained since the beginning of these communications that the Océ 2500 does not infringe the '387 patent, it is unlikely that the April 3 letter evinces a wish on Océ's behalf to continue negotiations for a license for their copier under this patent.

Kodak additionally finds fault with Océ filing a declaratory judgment action in order to not let this matter "languish indefinitely." The court does not agree. In fact, as stated above, the aim of a declaratory judgment is to relieve the plaintiff from uncertainty and delay regarding its legal rights. *Goodyear*, 824 F.2d at 956. It would be unfair to require imminent apprehension of an infringement suit when a defendant could delay such suit until all other enforcement efforts had failed. *Arrowhead*, 846 F.2d at 736. Resolving the uncertainty and anxiety resulting from a looming lawsuit is, indeed, the purpose of the Declaratory Judgment Act. *See Shell Oil Co.*, 970 F.2d at 889 ("the Declaratory Judgment Act was intended to protect threatened parties ..."). Hence, the court finds no fault with Océ wishing to determine this real and tangible issue in a prompt fashion.

Lastly, Kodak argues in its brief supporting its motion to dismiss that it had fully intended licensing discussions to continue after the March 31, 1991 meeting, and that Kodak would only begin "consideration of other appropriate actions" once licensing discussions had failed. Licensing discussions did fail. Océ steadfastly main-

tained its position that its 2500 copier did not infringe Kodak's '387 patent. And Kodak equally tenaciously maintained its infringement position and the requirements for a license. So, at the conclusion of the March 31 meeting, Océ determined that the discussions were fruitless and ended the negotiations. And, while it was Océ who terminated these discussions, it is not a prerequisite that negotiations must terminate naturally or amicably, nor that the defendant must be the party to terminate negotiations, for a declaratory judgment plaintiff to establish jurisdiction. It is enough that the defendant's conduct "be such as to indicate defendant's intent to enforce its patent." *Arrowhead,* 846 F.2d at 736. Therefore, Kodak's argument that it had intended negotiations to continue does not work to defeat jurisdiction.

## II. *Conclusion*

Based on Kodak's express charges of infringement, the conclusions of Kodak's legal staff regarding Océ's alleged infringement, Kodak's refusal to modify its position regarding the '387 patent, Kodak's statement in its November 18, 1991 letter that it would consider other appropriate action if license discussions broke down, and Kodak's reference to a recent case where a jury had found in favor of the patent holder, Océ has established that it had a reasonable apprehension of litigation or the threat of litigation if it continued its activities with regard to the Océ 2500. Hence, a justiciable controversy is present here and Kodak's motion to dismiss is denied.