**HEXACOMB CORPORATION, Plaintiff,**

v.

**DAMAGE PREVENTION PRODUCTS CORPORATION, et al., Defendants.**

**No. 3:95–CV–30RM.**

United States District Court, N.D. Indiana, South Bend Division.

Aug. 24, 1995.

Seth D. Linfield, Gerard T. Gallagher, South Bend, IN, for plaintiff.

Thomas J. Brunner, Jr., Edward A. Sullivan, III, South Bend, IN, Stanley A. Doten, David A. Hill, Michael M. Carlson, Palo Alto, CA, for defendant Damage Prevention Products Corp.

Timothy J. Abeska, Jeanine M. Gozdecki, South Bend, IN, Arne M. Olson, Daniel J. Deneufbourg, Chicago, IL, Daniel C. Meenan, Jr., Chicago, IL, for defendant American Honeycomb.

*MEMORANDUM AND ORDER*

MILLER, District Judge.

This cause comes before the court on defendant Damage Prevention Products Corporation's ("DPP") motion to dismiss for lack of personal jurisdiction and improper venue, on defendant American Honeycomb, Inc.'s ("AHI") motion to dismiss for lack of personal jurisdiction and improper venue, plaintiff Hexacomb Corporation's motions for an evidentiary hearing, and Hexacomb's motion for leave to file a surreply brief with respect to DPP's motion to dismiss. Because the parties' submissions sufficiently apprise the court of their positions, the court denies Hexacomb's motions for an evidentiary hearing. For the following reasons, the court denies DPP's and AHI's motions to dismiss; also, since the court denies DPP's motion to dismiss on the parties' original briefs, the court denies AHI's motion for leave to file a surreply.

*A.*

Hexacomb filed its complaint in this action on January 13, 1995, and on February 13 it moved for a preliminary injunction against both DPP and AHI. On February 21, DPP filed its motion to dismiss for lack of personal jurisdiction and improper venue, and on March 16 the court granted DPP's motion to extend its time to respond to the motion for a preliminary injunction until after the motion to dismiss is resolved. Also on March 16, the court granted Hexacomb's motion to take expedited discovery with respect to DPP's motion to dismiss.

AHI filed its motion to dismiss on April 3, 1995. On April 28, the court granted AHI's motion to extend its time to respond to the motion for a preliminary injunction until after the resolution of its motion to dismiss. The court also granted Hexacomb's motion to take expedited discovery with respect to AHI's motion to dismiss. Discovery and briefing have now been completed with respect to both defendants' motions to dismiss, and both motions are ripe for ruling.

This is Hexacomb's second attempt to assert its claims against DPP and AHI. Hexacomb's first attempt to sue DPP and AHI occurred in *Hexacomb Corp. v. GTW Enter-*

*prises,* No. 93 C 3107, a cause brought in the Northern District of Illinois, Eastern Division. As that court summarized the facts in that litigation:

> This case is about a former Hexacomb employee, George Wroblewski, Sr., who acquired confidential information regarding the construction of continuous-feed CHS machines during his employment with Hexacomb and used that information to start his own business, GTW Enterprises, Inc. ("GTW"). Hexacomb claims that DPP and AHI each purchased a continuous-feed CHS machine from GTW, an Indiana resident. The machines allegedly contain Hexacomb's trade secrets.

*Hexacomb Corp. v. GTW Enterprises,* No. 93 C 3107, 1994 WL 174114, 1994 U.S.Dist. LEXIS 5923, at *1 (N.D.Ill. May 5, 1994). In the Illinois litigation, DPP and AHI both successfully moved for dismissal based on lack of personal jurisdiction and improper venue, and both were dismissed from the suit on that basis. *See id.* at *17.

In this case, Hexacomb alleges the same basic facts: that Mr. Wroblewski acquired Hexacomb's trade secrets and then incorporated them into CHS-core machines built and sold to both DPP and AHI. Based on these basic facts, Hexacomb brings three claims against both defendants: (1) misappropriation of trade secrets (Compl. ¶¶ 70–82); (2) tortious interference with a contractual and business relationship (Compl. ¶¶ 83–89); and (3) replevin (Compl. ¶¶ 90–96).

*B. DPP's Motion to Dismiss for Lack of Personal Jurisdiction*

DPP contends that this court does not have personal jurisdiction over it to sustain this cause. When personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating a basis for the assertion of jurisdiction. *Health Management Professionals, Inc. v. Diversified Business Enters., Inc.,* 882 F.Supp. 795, 797 (S.D.Ind.1995); *Oce–Office Systems, Inc. v. Eastman Kodak Co.,* 805 F.Supp. 642, 643 (N.D.Ill.1992) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). "The court may consider affidavits and other documents outside the pleadings in reaching its decision, but must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts." *Health Management Professionals v. Diversified Business Enters.,* 882 F.Supp. at 797; *see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984); *L.H. Carbide Corp. v. Piece Maker Co.,* 852 F.Supp. 1425, 1428 (N.D.Ind.1994). When a district court determines whether it may exercise personal jurisdiction over a defendant solely on the basis of written materials, a plaintiff need only establish a prima facie case for personal jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980). The court must accept as true all undenied factual assertions in the plaintiff's submissions and resolve all disputes regarding relevant facts in the plaintiff's favor. *John Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.,* 821 F.2d 399, 402 (7th Cir.1987); *Oce–Office Systems, Inc. v. Eastman Kodak Co.,* 805 F.Supp. at 643; *Neiman v. Rudolf Wolff & Co.,* 619 F.2d at 1190.

A federal court asserting diversity jurisdiction acquires personal jurisdiction over a non-resident defendant in accordance with the long-arm statute of the state in which it sits. *Scott Turnock v. Cope,* 816 F.2d 332, 334 (7th Cir.1987); *Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. 274, 278 (N.D.Ind.1993). Indiana's long-arm statute, Trial Rule 4.4(A), consistently has been construed to extend personal jurisdiction to the extent allowed by due process. *Nu–Way Sys. of Indianapolis v. Belmont Marketing, Inc.,* 635 F.2d 617, 619 (7th Cir.1980); *Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. at 278. Therefore, rather than applying the exact terms of Trial Rule 4.4(A), the court "need only engage in a single search for the outer limits of what due process permits." *Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. at 278.

The Due Process Clause requires that the defendant have "minimum contacts" with the forum state so that the assertion of

jurisdiction "does not offend the 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). No hard and fast rules define "minimum contacts". *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (quoting *Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216–17, 92 L.Ed. 1561 (1948)) ("We recognize that this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'"). The unilateral activity of one claiming a relationship with the nonresident defendant does not satisfy the "minimum contacts" requirement. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

The due process analysis examines whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The test for determining when a defendant "should reasonably anticipate being haled into" an out-of-state court is whether by some act the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *see also World–Wide Volkswagen v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567; *Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1362 (7th Cir.1985). The defendant must derive some benefit from the forum state. *Id.* at 1362. Jurisdiction depends "upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure," rather than the sheer number of contacts with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. at 319, 66 S.Ct. at 160.

"[T]he test is necessarily fact specific and ... there is no rote, mechanical test to be applied. Rather the court must consider all of the facts and circumstances of the individual case." *Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. at 279. "When the jurisdictional sufficiency of a complaint is challenged, ... the burden is on the plaintiff to establish jurisdiction affirmatively with competent proof." *Oce–Office Systems, Inc. v. Eastman Kodak Co.,* 805 F.Supp. at 643.

Two different types of jurisdiction can be exercised over an out-of-state defendant:

When the defendant's activities in the state with respect to the transaction underlying the litigation serve as the basis for jurisdiction, the assertion of jurisdiction is said to be "specific." By contrast, when the defendant's overall activity in the state, not simply its actions with respect to the underlying transaction, are the basis, the jurisdiction is said to be "general."

*Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1244 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991) (citations omitted). "Specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be 'related' in some way to the defendant's contact with the forum. General jurisdiction requires a greater amount of contacts, but permits the court to include in its analysis contacts that have absolutely no relationship to the underlying dispute." *Charlesworth v. Marco Mfg. Co.,* 878 F.Supp. 1196, 1200 (N.D.Ind.1995). DPP contends that neither specific nor general jurisdiction exists in this cause; Hexacomb contends that both exist. Either would be sufficient.

Courts are more demanding when jurisdiction is sustained only on a basis of general jurisdiction. In such a case, the defendant must have "continuous and systematic general business contacts" in the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Those contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from deal-

ings entirely distinct from those activities." *International Shoe Co. v. Washington,* 326 U.S. at 318, 66 S.Ct. at 159. The court must "scrutinize the nature and the quality of the contacts of the defendant with the forum state." *Carbide Corp. v. Piece Maker Co.,* 852 F.Supp. at 1433. "This is a fairly high standard in practice." *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d at 1245 (quoting *Fields v. Sedgwick Associated Risks Ltd.,* 796 F.2d 299, 301 (9th Cir.1986)); *see also Intermatic, Inc. v. Taymac Corp.,* 815 F.Supp. 290, 293 (S.D.Ind.1993) (citing *Wilson v. Humphreys (Cayman) Ltd.*).

■■■ On the other hand, specific jurisdiction "turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation.'" *Saylor v. Dyniewski,* 836 F.2d 341, 344 (7th Cir.1988) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)); *see also Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d at 1245. For specific jurisdiction to exist, the controversy must arise from or be related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. at 414, 104 S.Ct. at 1872. Jurisdiction based on specific jurisdiction comports with due process only if DPP reasonably should have anticipated being haled into court in Indiana. *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d at 1244 (citing cases). DPP must have purposefully availed itself of the "privilege of conducting activities" in Indiana. *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183).

■■■ The court is satisfied that it has specific personal jurisdiction over DPP under Hexacomb's complaint. Hexacomb brings three claims against DPP in its complaint: (1) misappropriation of trade secrets; (2) tortious interference with a contractual and business relationship; and (3) replevin. Hexacomb's claims arise from DPP's purchase of a specific machine (a "CHS-core" machine) from GTW Enterprises, Inc. in 1992. Disregarding many of Hexacomb's factual contentions about DPP's business dealings with GTW, the following facts, taken only from the affidavit of Harry Woods, DPP's founder and President, which are di-

rectly relevant to DPP's purchase of the CHS-core machine and are thus relevant to Hexacomb's claims, support the court's exercise of personal jurisdiction over DPP:

● In July of 1992, George Wroblewski, Sr. was at DPP's plant in California repairing DPP's expansion machine. Mr. Wroblewski and Mr. Harry Woods discussed the possibility of Mr. Wroblewski and his company, GTW, building a continuous-feed CHS machine. The two agreed to talk more about the subject.

● From July 1992 to January 1993, Mr. Wroblewski and Mr. Woods further discussed GTW building a CHS machine. All of these discussions and negotiations either occurred in California or over the phone, with Mr. Woods in California and Mr. Wroblewski in Indiana. Mr. Woods did not travel to Indiana during these discussions.

● In January 1993, GTW agreed to build, and DPP agreed to purchase, a continuous-feed CHS machine.

● On April 8, 1993, Mr. Woods travelled to Indiana to check on the GTW's progress in building the CHS machine. This was the only time that any employee or representative of DPP travelled to Indiana regarding the CHS machine.

● On June 2, 1993, GTW shipped the CHS machine to California.

"Specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be 'related' in some way to the defendant's contact with the forum." *Charlesworth v. Marco Mfg. Co.,* 878 F.Supp. at 1200. Although arguably minimal, DPP's contacts with Indiana reach the level of "minimum contacts" such that DPP has purposefully availed itself of the "privilege of conducting activities" in Indiana, and therefore reasonably should have anticipated being haled into court in Indiana with respect to its business dealings here. *See Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d at 1244.

■■■ Mr. Woods's trip to Indiana to check on GTW's progress in building the machine is a manifest indication that DPP purposefully availed itself of the privilege to conduct busi-

ness in Indiana.[1] To this extent, this case is similar to *Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. 274 (N.D.Ind.1993), in which the court stated:

> The most important factor that demonstrates that [U–Haul] purposefully availed itself of this forum is that [U–Haul] sent its representatives into the State of Indiana on two separate occasions to insure the performance of the contract which forms the basis of this litigation.

＊　　＊　　＊　　＊　　＊　　＊

> The presence of [U–Haul's] representatives in the forum state is a substantial contact that shows [U–Haul] purposefully availed itself of the forum state, and therefore, is subject to the personal jurisdiction of the forum state.

*Id.* at 279; *see also Neiman v. Rudolf Wolff & Co.,* 619 F.2d 1189, 1193 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980) (holding that a lunch meeting in Illinois on terms of contract is sufficient to support specific jurisdiction); *Ogden Engineering Corp. v. St. Louis Ship,* 568 F.Supp. 49, 54 (N.D.Ind.1983) (most important factor in determining that defendant had purposefully availed itself of the forum was that defendant had sent its representatives into Indiana during the contract negotiations). That Mr. Woods's visit to Indiana was subsequent to the formation of the contract to purchase the CHS machine is irrelevant. *See Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. at 280–281.

█ Specific jurisdiction requires not only minimum contacts, but also that the

litigation "arise[ ] out of" or be "related to" those minimum contacts. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. at 414, 104 S.Ct. at 1872. The case, as it is alleged in the complaint, is founded on an alleged misappropriation of trade secrets and alleged tortious interference with contract that arises from DPP's purchase of the CHS-core machine from GTW. Because this case arises from or is related to that transaction, specific personal jurisdiction for this case is appropriate in light of DPP's minimum contacts with Indiana with respect to its purchase of the CHS machine.

The exercise of personal jurisdiction over DPP "comport[s] with 'traditional notions of fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co. v. Washington,* 326 U.S. at 320, 66 S.Ct. at 160). In *Burger King,* the Supreme Court outlined the factors that may be considered when determining whether the exercise of personal jurisdiction comports with fair play and substantial justice: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering substantive social policies. *Id.* at 477, 105 S.Ct. at 2184. The *Burger King* court explained that "[t]hese considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.*

---

1. The court recognizes that physical presence in the forum state is not a prerequisite to the existence of personal jurisdiction. Indeed, jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum state" where the defendant's "efforts are 'purposefully directed' toward residents of" that state. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774–75, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984)) (emphasis in original); *see also Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193, 1203–04 (7th Cir.1985) (court declines to "create a rule that would require a defendant to step across state lines as a predicate for personal

jurisdiction"). For example, a defendant that solicits and conducts its business through the mail and electronic communications "create[s] a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990); *see also Duncan v. Hickory Hills Lakes, Inc.,* No. 89–508–C, 1991 WL 13949, 1991 U.S.Dist. LEXIS 1406 (S.D.Ind. Jan. 24, 1991) (defendant has minimum contacts when it solicited business in Indiana with direct mailings and advertisements).

DPP contends that an exercise of personal jurisdiction over it would not comport with fair play and substantial justice, in part, because "Indiana has little, if any, interest in this dispute." The court agrees only to a point. Although neither DPP nor Hexacomb are Indiana corporations, Indiana has an interest in providing redress for any alleged misappropriation of trade secrets or tortious interference with contracts occurring, at least partially, within its borders. Further, although the court appreciates DPP's concerns that it will be "severely inconvenienced" by having to defend this litigation due to its size, this factor alone is not sufficient to defeat the existence of jurisdiction.[2]

Therefore, the court denies DPP's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

## C. AHI's Motion to Dismiss for Lack of Personal Jurisdiction

■ AHI also contends that this court cannot exercise personal jurisdiction over it. Again, the plaintiff bears the burden of demonstrating a basis for the assertion of jurisdiction, and need only establish a prima facie case for personal jurisdiction. The court must accept as true all undenied factual assertions in the plaintiff's submissions and resolve all disputes regarding relevant facts in the plaintiff's favor.

Hexacomb contends that the court could exercise either specific or general jurisdiction over AHI with respect to this cause. The court agrees that it can exercise specific personal jurisdiction. Hexacomb has brought the same three claims against AHI in its complaint as it has against DPP: (1) misappropriation of trade secrets; (2) tortious interference with a contractual and business relationship; and (3) replevin. As with its claims against DPP, Hexacomb's claims against AHI arise from AHI's purchase of a CHS-core machine from GTW Enterprises, Inc. As is the case with DPP, the court may

disregard many of the factual contentions made by Hexacomb about AHI's business dealings with GTW when determining that it may properly exercise specific jurisdiction over AHI. The uncontested facts directly relevant to AHI's purchase of the CHS-core machine, taken only from the affidavits submitted by AHI, are as follows:

- In early 1993, Foster Bates, Chairman, president and CEO of AHI, and Fred Rose, Mr. Bates' business associate, met with George Wroblewski of GTW in Batavia, Ohio. *See* Bates Aff. ¶ 9; Rose Aff. ¶ 8.

- After the meeting, AHI decided to purchase a CHS-core machine from GTW. *See* Bates Aff. ¶ 10.

- All discussions and negotiations with respect to the purchase of the machine occurred either in Ohio, by telephone between Ohio and Indiana, or through the United States mail. *See* Bates Aff. ¶ 10; Rose Aff. ¶ 9.

- On two separate occasions in late spring of 1993, Richard Gillette travelled to LaPorte, Indiana to check on GTW's progress in building the CHS-core machine. Mr. Gillette had no authority to transact business on behalf of AHI and did not transact business with GTW. However, Mr. Gillette did have authority to review progress of the machine and report that progress. Mr. Gillette is the Vice President and General Manager of AHI, and has held those positions since spring of 1993. *See* Bates Aff. ¶ 11; Gillette Aff. ¶¶ 3 and 10.

As previously discussed, the exercise of specific jurisdiction "requires only a minimum of contacts, but also requires the controversy to be 'related' in some way to the defendant's contact with the forum." *Charlesworth v. Marco Mfg. Co.*, 878 F.Supp. at 1200. AHI's contacts with Indiana, as outlined above, demonstrate that AHI has

---

**2.** *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2184: "On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, ... a defendant claiming substantial inconvenience may seek a change of venue." *Id.* (citing 28 U.S.C. § 1404(a)).

purposefully availed itself of the "privilege of conducting activities" in Indiana, and therefore reasonably should have anticipated being haled into court in Indiana with respect to its business dealings here. *See Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d at 1244.

As was true of DPP, an AHI representative twice having travelled to Indiana to check on GTW's progress in building the CHS-core machine is a strong factor indicating that AHI has purposefully availed itself of the privilege to conduct business in Indiana, *see, e.g., Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.*, 837 F.Supp. at 279 ("The presence of [U–Haul's] representatives in the forum state is a substantial contact that shows [U–Haul] purposefully availed itself of the forum state, and therefore, is subject to the personal jurisdiction of the forum state."); that Mr. Gillette's visits to Indiana were subsequent to the formation of the contract to purchase the CHS-core machine is irrelevant. Thus, the court is satisfied that AHI has had the "minimum contacts" with Indiana necessary to support the court's exercise of specific jurisdiction.

Hexacomb's claims either "arise[ ] out of" or are "related to" those minimum contacts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. at 414, 104 S.Ct. at 1872. In its reply memorandum, AHI quotes from a case from the Southern District of Indiana in support of its contention that specific jurisdiction is nonexistent:

> Although the exercise of specific jurisdiction clearly depends on the existence of some nexus between the defendant's contacts and the controversy, it is not clear how strong this nexus must be. Case law

and legal commentary are split over this question.

> Some have argued that contacts must be substantively related to (i.e. "arise out of") the controversy in order to support specific jurisdiction.... Others suggest that an adequate nexus exists not only if the controversy "arises out of" but also if it is even "related to" the defendant's contacts in the loosest sense of that term.... Still others argue for a sliding scale of contacts that blurs the distinction between specific and general jurisdiction.

> Both federal and state cases decided in Indiana suggest that the defendant's contacts with the forum must be substantively related to the cause of action in order to confer specific jurisdiction over the defendant. After analyzing these cases and considering the arguments of the three schools of thought, I am convinced that substantive relevance is the proper test for "relatedness" that conditions the exercise of specific jurisdiction.

*Simpson v. Quality Oil Co., Inc.*, 723 F.Supp. 382, 388 (S.D.Ind.1989).

Given this case, AHI argues, "[t]here is no basis for a finding of specific jurisdiction over AHI. There is no meaningful commercial relationship among Indiana, AHI's conduct in purchasing the 'core' machine and Hexacomb." In furthering this argument, however, AHI appears to misapprehend the applicable standard. Specific jurisdiction does not turn on the relationship between the forum, the defendant's activities in the forum, and the plaintiff. Rather, the court's exercise of specific jurisdiction "turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation,'" *Saylor v. Dyniewski*, 836 F.2d at 344 (quoting *Shaffer v. Heitner*, 433 U.S. at 204, 97 S.Ct. at 2580).[3]

**3.** AHI also argues that:

> Probably the most salient consideration regarding the issues of jurisdiction ... is the fact that Hexacomb's entire theory relates to conduct and events between and involving only GTW, a non party, and AHI. Nothing on which it relies even remotely concerns or relates directly to the plaintiff. On the other hand, virtually all of the conduct and events concerning the parties in the opinions on which Hexacomb relies involved direct com-

mercial contact between the plaintiffs and the defendants in those cases.
AHI's Reply Mem. at 3.
Indeed, with regard to its claims against DPP and AHI, Hexacomb's lack of connection to this forum makes the motions to dismiss close cases. As noted by AHI, this case is factually dissimilar to cases relied upon by both by Hexacomb and the court in which the defendant was subject to specific jurisdiction because of its dealings with the plaintiff in the forum state. *See, e.g., Neiman v. Rudolf Wolff & Co.*, 619 F.2d at 1193; *Ogden*

Applying this standard, the court may exercise specific jurisdiction over AHI because this litigation is substantively related to AHI's contacts with the state, in that Hexacomb's claims, at least partially, arise out of AHI's contacts. Hexacomb's complaint alleges that its claims are founded upon an alleged misappropriation of trade secrets and alleged tortious interference with contract that arises from AHI's purchase of the CHScore machine from GTW. The exercise of personal jurisdiction over AHI "comport[s] with 'traditional notions of fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. at 2184.

Therefore, the court denies AHI's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

### D. DPP and AHI's Motions to Dismiss for Improper Venue

DPP and AHI also move the court for dismissal pursuant to Fed.R.Civ.P. 12(b)(3) contending that venue is improper in this district. Both DPP and AHI contend that since the court cannot exercise personal jurisdiction over them, venue in this court would be improper. The court has concluded that it can exercise personal jurisdiction over both DPP and AHI, and thus this contention is without merit.

Venue in the district courts is generally governed by 28 U.S.C. § 1391, which provides that actions, such as this one, brought solely under diversity jurisdiction may be brought only in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Because the court has concluded that both AHI and DPP are subject to personal jurisdiction in this district, § 1391(a)(3) would appear to be the logical provision for supporting venue in this district, but § 1391(a)(3) is to be used only "if there of no district in which the action may otherwise be brought."[4]

■ In any event, venue is appropriate in this district under § 1391(a)(1): in "a judicial district where any defendant resides, if all defendants reside in the same State." Although neither DPP nor AHI are Indiana corporations, for the purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Since both AHI and DPP are subject to personal jurisdiction in the district, both are deemed to reside in this district, and therefore venue in this district is proper under § 1391(a)(1).

*Engineering Corp. v. St. Louis Ship,* 568 F.Supp. at 54; *Reliable Tool & Machine Co., Inc. v. U–Haul International, Inc.,* 837 F.Supp. at 280–81. Nevertheless, as previously stated, the court's exercise of specific jurisdiction "turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation,'" *Saylor v. Dyniewski,* 836 F.2d at 344; the plaintiff's connection to the forum is not enumerated in this test as a factor to be given much weight.

4. Unlike the current version, the 1990 version of § 1391(a)(3) stated that venue was proper in "a judicial district in which the defendant are subject to personal jurisdiction at the time the action commenced." As one commentator noted, this language rendered § 1391(a)(1) and (a)(2) "wholly superfluous." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal*

*Practice and Procedure* § 3802.1 (1995 pocket part).

Fortunately in 1992 Congress corrected the mistake it had made in 1990. Section 504 of the Federal Courts Administration Act of 1992 amends 28 U.S.C.A. § 1391(a)(3). It now allows venue in a diversity case to be laid in "a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." This makes it clear—as must always have been intended—that (a)(3) is a fallback provision, similar to (b)(3), and that it can be used only if there is no district in which venue can be laid under (a)(1) or (a)(2).

*Id.*

Accordingly, both DPP's and AHI's motions to dismiss for improper venue are denied.

### E. Conclusion

Therefore, for the reasons discussed in this memorandum, the court:

(1) DENIES Hexacomb's motions for an evidentiary hearing and oral argument (filed April 20, 1995 (# 37) and filed July 14, 1995 (# 52));

(2) DENIES Hexacomb's motion for leave to file a surreply to Damage Prevention Products Corp.'s motion to dismiss (filed July 3, 1995 (# 48));

(3) DENIES Damage Prevention Products Corp.'s motion to dismiss (filed February 21, 1995 (# 17)); and

(4) DENIES American Honeycomb, Inc.'s motion to dismiss (filed April 3, 1995 (# 34)).

Pursuant to orders entered March 16, 1995 and April 28, 1995, the court now AFFORDS defendant Damage Prevention Products Corp. and American Honeycomb, Inc. fifteen (15) days from the date of this order to file their responses to the plaintiff's motion for a preliminary injunction.

SO ORDERED.