972 F.2d 1295
 23 U.S.P.Q.2d 1927
 WEST INTERACTIVE CORPORATION, Plaintiff-Appellant,
v.
FIRST DATA RESOURCES, INC., Defendant-Appellee.
 No. 91-1485.
 United States Court of Appeals,
Federal Circuit.
 Aug. 13, 1992.
 
 Dennis L. Thomte, Zarley, McKee, Thomte, Voorhees & Sease, of Omaha, Neb., argued, for plaintiff-appellant.
 Jai Ho Rho, Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, of Los Angeles, Cal., argued for defendant-appellee. With him on the brief was Harold E. Wurst.
 Before MICHEL, LOURIE, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 West Interactive Corporation filed a declaratory judgment action against First Data Resources, Inc. West sought a declaration that First Data could not successfully sue it for patent infringement. The United States District Court for the District of Nebraska dismissed West's action. West Interactive v. First Data Resources, No. CV. 90-0-688, 1991 WL 355059 (July 22, 1991). West appeals from the order of dismissal. Because the record does not show an actual controversy between the parties at the time of West's complaint, this court affirms the order of dismissal.
 
 BACKGROUND
 
 2
 First Data owns U.S. Patent Nos. 4,845,739, 4,930,150, and 4,939,773 relating to telephonic interface control systems. First Data has granted non-exclusive licenses to the patented inventions to Call Interactive, a joint venture between FDR Interactive Technologies Corporation and American Telephone & Telegraph Company. FDR Interactive Technologies Corporation is a wholly-owned subsidiary of First Data.
 
 
 3
 On April 4, 1990, Call Interactive officials met with counterparts of the Semper Barris Company in Omaha, Nebraska. During the meeting Mr. Ronald Katz, a representative of Call Interactive, commented to Mr. Andrew Batkin, President of Semper Barris, about infringement of the '739, '150, and '773 patents. Specifically, according to Mr. Batkin's deposition, Mr. Katz noted that both West and Semper Barris had infringed the patents. Mr. Katz promised that Semper Barris would have no legal problems if it chose to do business with Call Interactive.
 
 
 4
 Mr. Batkin informed Mr. Troy Eaden, President of West, of this conversation. The district court characterized this communication as "nothing more than recitation of a hearsay comment." Further, the district court noted:
 
 
 5
 Not only is there no allegation that First Data authorized such communication by Call Interactive employees, but there also is no allegation that First Data had any communication whatsoever with West with regard to the patents-in-suit....
 
 
 6
 West Interactive v. First Data Resources, No. CV. 90-0-688, slip op. at 4-5 (D.Neb. July 22, 1991). Later Mr. Eaden learned that First Data had filed lawsuits in the United States District Court for the Central District of California against 900 Million, Inc., Madmony Productions, Inc., and Avi Madmony for patent infringement. On October 24, 1990, West filed this declaratory judgment action against First Data. West allegedly felt that First Data would also sue it for patent infringement.
 
 
 7
 On July 22, 1991, after a thorough review of the evidence, the district court dismissed West's declaratory judgment action:
 
 
 8
 As previously noted, there has been no contact, directly or indirectly, between the plaintiff and First Data.
 
 
 9
 ....
 
 
 10
 There is not any credible indication that First Data intends to bring suit against West. In sum, the Court concludes that the purported apprehension West maintains it is experiencing on the basis of its allegations is unreasonable.
 
 
 11
 West Interactive, slip op. at 6-7. West appealed to this court. This court assumes jurisdiction under 28 U.S.C. § 1295(a)(1) (1988) because the district court had jurisdiction under 28 U.S.C. § 1338(a) (1988).
 
 ANALYSIS
 
 12
 Under the Declaratory Judgment Act, a court of the United States may declare the rights of an interested party to an "actual controversy." 28 U.S.C. § 2201 (1988); Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 882, 228 USPQ 845, 847 (Fed.Cir.1985), cert. denied, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). The plaintiff has the burden to show an actual controversy. Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1399, 222 USPQ 943, 949 (Fed.Cir.1984). To detect an actual controversy, this court examines two factors:
 
 
 13
 First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device.
 
 
 14
 Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955, 3 USPQ2d 1310, 1311 (Fed.Cir.1987). This court applies this objective test to the facts at the time the complaint is filed.* Indium Corp., 781 F.2d at 883.
 
 
 15
 This test requires the trial court, and this court on review, to examine First Data's conduct. This court must determine whether the trial court correctly determined that First Data's conduct did not create in West a reasonable apprehension of suit. In this case, the district court found that First Data undertook no conduct at all towards West, finding, inter alia:
 
 
 16
 [T]here has been no contact, directly or indirectly, between the plaintiff and First Data.
 
 
 17
 West Interactive, slip op. at 6. This court agrees that this record does not contain enough evidence of conduct of First Data or conduct attributable to First Data to arouse in West a reasonable apprehension of a lawsuit.
 
 
 18
 The central event which allegedly caused West's apprehension was the meeting between Call Interactive and Semper Barris. No First Data or West representatives even attended that meeting. Nor does the record show that First Data authorized or advised anyone to make statements at that meeting. Nor does the record show that First Data had any reason to anticipate Mr. Katz's oral statements. Rather Mr. Katz, a member of Call Interactive's negotiating team, stated to Mr. Batkin that infringement of the patents would lead to legal problems. Mr. Katz was not an owner, officer, agent, or even an employee of First Data. Although inventor of the patented devices, he was not even an officer of the joint venture of First Data's subsidiary, but merely one of its employees.
 
 
 19
 The district court considered Mr. Katz's comments and concluded:
 
 
 20
 Not only is there no allegation that First Data authorized such communication ... there is no allegation that First Data had any communication whatsoever with West with regard to the patents-in-suit....
 
 
 21
 West Interactive, slip op. at 4-5. In sum, West has not shown that First Data undertook any conduct sufficient to support West's alleged apprehension of litigation. Mr. Katz's oral statement to Semper Barris in the course of negotiations, with no West or First Data representatives present, does not give West an objective reason to fear a lawsuit. West need not prove the truth of Mr. Katz's statements to Semper Barris, but only that those comments in context created a reasonable basis for West to fear litigation. Upon review of all the circumstances, taken together, this court detects no error in the district court's conclusion that West did not meet that burden of proof.
 
 
 22
 Although Call Interactive is a non-exclusive licensee of First Data and a joint venture of a First Data subsidiary, the record contains no evidence which would justify our attributing Call Interactive's conduct to First Data. Mr. Batkin's affidavit lists Mr. Katz only as an employee of Call Interactive. Without some showing of First Data's knowledge of and assent to Call Interactive's conduct, this court cannot attribute Call Interactive's conduct to First Data. The district court found as a fact that First Data had not even had any indirect contact with West. This court discerns no clear error in that finding. The district court correctly detected West's failure to show an actual controversy with First Data.
 
 
 23
 For still another reason, the April 4, 1990 meeting did not constitute conduct sufficient to create a reasonable apprehension in West. In a recent declaratory judgment appeal, this court stated:
 
 
 24
 Amoco replies that Shell had no reasonable apprehension because these alleged "charges" of infringement were merely "jawboning" which typically occurs in licensing negotiations. We agree with Amoco.
 
 
 25
 Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed.Cir.1992). In Shell Oil, the negotiations were between the declaratory judgment plaintiff and defendant. In this instance, neither West nor First Data were even involved in the negotiations. In this case the negotiation setting and the vagueness of Mr. Katz's oral statements further emphasize that the April 4 episode was more akin to jawboning Semper Barris than to threatening litigation against West. Thus, the context and content of Mr. Katz's comments support the district court's conclusion that West lacked a reasonable basis for apprehension. For this reason as well, the district court correctly determined that "West's purported apprehension of an infringement suit is unreasonable."
 
 
 26
 West argues that First Data's filings against 900 Million, Inc., Madmony Productions, Inc. and Avi Madmony support the reasonableness of West's apprehension. The district court correctly noted that a patent owner's willingness and capacity to enforce its patent rights is pertinent to the inquiry for an actual controversy. Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 737, 6 USPQ2d 1685, 1690 (Fed.Cir.1988). This showing, however, is not always conclusive. Indium Corp., 781 F.2d at 883. The record does not show that First Data invariably pursues litigation against alleged infringers. Indeed, as noted by the district court, the record does not show that First Data even inquired of West about its activities or infringement. Even in light of Mr. Katz's comments, First Data's litigation against unrelated third parties did not give West an objective reason to fear litigation. The record in this case supports the district court's dismissal.
 
 CONCLUSION
 
 27
 The district court correctly determined that First Data did not engage in conduct sufficient to give West a reasonable apprehension of suit. The record does not show conduct of First Data or conduct attributable to First Data sufficient to arouse in West an objective fear of suit before West filed its action. West did not show any actual controversy between First Data and itself. Accordingly, this court affirms the district court's order dismissing West's complaint for lack of subject matter jurisdiction.
 
 
 28
 AFFIRMED.
 
 
 29
 LOURIE, Circuit Judge, dissenting.
 
 
 30
 I respectfully dissent and would reverse the district court's decision. This is a close case; where to draw to the line in determining when reasonable apprehension of suit exists is difficult. Surely, we should not condone permitting a patentee to be dragged into court when it has not engaged in threatening or aggressive acts because it is desirable that patentees inform potential infringers of their patent rights without fear of starting unjustified litigation. See Shell Oil Co. v. Amoco Corp., 970 F.2d 885 (Fed.Cir.1992).
 
 
 31
 On the other hand, we should not countenance parties pulling the wool over courts' eyes. When they are acting threateningly, albeit in indirect ways, and then, when a threatened infringer brings a declaratory judgment action, they should not be permitted to throw up their hands and say, "Who me?"
 
 
 32
 The Declaratory Judgment Act was enacted to prevent patent owners from using "guerrilla-like" tactics and attempting "extrajudicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735, 6 USPQ2d 1685, 1688 (Fed.Cir.1988). I believe that is what happened here.
 
 
 33
 Whether the events that occurred were sufficient to create an actual controversy is a question of law which we review de novo. Arrowhead, 846 F.2d at 735, 6 USPQ2d at 1688. West had the burden of establishing by a preponderance of the evidence that it reasonably believed that First Data had an intent to initiate a patent infringement suit against West. "We must look for any express charges of infringement, and if none, then to the 'totality of the circumstances.' " Shell Oil, at 888.
 
 
 34
 Here there was no express charge made to West, but the totality of the circumstances leads to a clear conclusion of reasonable apprehension. In its complaint, West recited that First Data had sued three other companies alleging infringement of the patents in issue, that those three companies render services similar to those of West, that a potential customer of West was advised by Mr. Katz that West infringed the First Data patents, and that First Data intended to enforce its patents. These factors, taken together, are sufficient to conclude that a case or controversy existed between West and First Data.
 
 
 35
 The majority disputes Mr. Katz's authority to implicate First Data. However, Mr. Katz was no irrelevant small fry; he is the inventor of the patents-in-suit and an employee of Call Interactive, a licensee of the patents and a joint venture of a First Data subsidiary.[1] It is inconceivable to me that he was not acting with the knowledge and authority of the patentee. He was attempting to persuade Mr. Batkin of Semper Barris, a potential customer of West, to do business with Call Interactive. In Mr. Batkin's October 22, 1990 affidavit, he stated:
 
 
 36
 During my conversation with [Mike Parks, Bill Miles, Ron Katz and others who were employed by Call Interactive], I was advised that Semper Barris infringed the Call Interactive and/or First Data Resources patents and was also told that other companies, including West, infringed the patents and that they fully intended to enforce the patents.
 
 
 37
 (Emphasis added). Predictably, this was communicated to West.
 
 
 38
 If Mr. Katz was not acting with the actual knowledge and authority of First Data, the latter should be held to have attributed knowledge and authority so that the patentee is held responsible under the Declaratory Judgment Act for what it either intended or was reasonably foreseeable. At first glance, the relationships may look tenuous, but on closer inspection, it is clear that the parties were all linked together. Affirmance by this court simply permits a patentee to play games with the courts.
 
 
 39
 Furthermore, no direct communication between West and First Data was required for a reasonable apprehension of suit to exist. Arrowhead, 846 F.2d at 736, 6 USPQ2d at 1689 ("If the circumstances warrant, a reasonable apprehension may be found in the absence of any communication from defendant to plaintiff"). Also, contrary to the District Court's opinion, comments made to West's customer cannot be characterized as hearsay for the purpose of determining that a reasonable apprehension of suit exists. West does not have to prove the truth of the matter asserted, but only what it reasonably believed. See Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 956, 3 USPQ2d 1310, 1312 (in an affidavit, a representative of the patentee "made innuendos that could reasonably have led Goodyear to believe that Releasomers would bring an infringement suit").
 
 
 40
 Finally, the fact that the patentee also sued three other companies similarly situated supports a conclusion that West had a reasonable apprehension of suit. Infringement suits against third parties may be evidence of a reasonable apprehension. See Arrowhead, 846 F.2d at 733, 6 USPQ2d at 1686 (defendant sued third party for infringement); Shell Oil, at 888 ("[r]elated litigation may be evidence of a reasonable apprehension"). Such suits had been brought by First Data and West knew of them.
 
 
 41
 While not of record because it occurred after this suit was brought, it is a matter of no small interest that First Data did sue West after the district court dismissed West's declaratory judgment action. The decision of the panel thus frustrates the purpose of the Declaratory Judgment Act by permitting a patentee to indirectly threaten a company, not be responsible for that action by responding to a lawsuit, and then choosing its own forum in a later suit. For the above reasons, I would reverse the decision of the district court.
 
 
 
 *
 West asked this court to consider that First Data filed a patent infringement suit against West on August 20, 1991--many months after West's October 1990 filing. Because this court examines West's declaratory judgment action at the time of its filing, First Data's subsequent action is irrelevant. Moreover, First Data filed its infringement action only after receipt of an August 6, 1991 letter from West's Chairman, Gary West, which appeared to admit past infringement:
 
 
 I
 am writing at this time to make it perfectly clear that [West] has been utilizing most of the systems and processes described above [referring to the '739, '150, and '773 patents] for the past several years, and intends to continue utilizing those systems and processes indefinitely
 
 
 [1]
 While not of record, or necessary to find reasonable apprehension of suit, Mr. Katz was also Vice Chairman of a sister company of the patentee